LOUISE M. BEEKMAN, Appellant, *v.* THE BROOKLYN AND BRIGHTON BEACH RAILROAD COMPANY, Respondent.

MARION D. McCOLLUM, Appellant, *v.* THE BROOKLYN AND BRIGHTON BEACH RAILROAD COMPANY, Respondent.

*Elevated railroad for rapid transit in a city — cannot be constructed under chapter 140 of 1850 — section 123 of chapter 676 of the Laws of 1892 applies only to rapid transit railroads — section 23 of title 19 of chapter 863 of 1873 applies only to street railroads.*

An elevated railroad constructed through a city for the purpose merely of affording rapid transit or serving as a substitute for a street railroad, even though built on its own right of way, cannot be constructed under the authority of the Railroad Act (Chap. 140 of 1850). A railroad corporation, however, organized under chapter 140 of the Laws of 1850, need not be wholly confined to the surface and not at all an elevated or underground structure.

By section 123 of chapter 676 of the Laws of 1892 it is provided: "No such railway shall be located in or upon * * * Lefferts place, * * * Classon and Franklin avenues * * * between the southerly line of Lexington avenue and the northerly line of Atlantic avenue, * * * but such railway may be located and constructed across such excepted streets, avenues and places, at their intersection only with other streets, avenues and places."

*Held,* that the direction that no such railroad shall be located upon such streets was plainly, as a matter of context, limited to railroads incorporated under the Rapid Transit Law;

That where a railroad is to be constructed on property abutting on the street, such a location may fairly be considered as being at the intersection of the street;

Section 23 of title 19 of chapter 863 of the Laws of 1873, being the charter of the city of Brooklyn, has no application to any railroad but street railroads.

APPEAL by the plaintiff in each of the above-entitled actions from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 15th day of April, 1895, upon the decision of the court rendered after a trial at the Kings County Special Term dismissing the plaintiff's complaint upon the merits.

These actions were brought to restrain the defendant from entering upon any portion of Lefferts place, or Franklin or Atlantic avenues in the city of Brooklyn, or erecting its structure therein.

*George W. Wingate,* for the appellants.

*William N. Dykman* and *George I. Murphy,* for the respondent.

PRATT, J.:

This is an appeal by the plaintiff in each of the above-entitled actions from a judgment at Special Term sustaining the right of the defendant to change its terminus and grade so as to connect with an elevated railroad. To do this it is necessary to cross at very nearly right angles two streets.

From a careful examination of the case it appears that the conclusions of law are amply sustained by the evidence, and the opinion rendered at the Special Term covers every material point raised in the case, and we think the judgments may well be affirmed upon it. I may add, however, that the cases seem to be devoid of all merit in equity, as the plaintiffs show no irreparable injury which they can suffer, and in my judgment have no standing in court to oppose the proposed improvement. *First.* It is to be noticed that no encroachment is threatened upon any land or easement of the plaintiffs, but the same is to be built upon the private property of the defendant, and the plaintiff in the first above-entitled action does not even abut upon the streets to be crossed by defendant near the point where such crossing is to be made. It is claimed that an act of the legislature forbids the building of a railroad in one of the streets to be crossed, but what private citizen can champion the cause except one who is interested in having the law enforced.

It is common knowledge too plain to require proof, or to be disputed, that the proposed connection will greatly add to the public convenience, and that it falls within the settled rule of policy of the State to permit railroads to connect for the convenience of the travelling public. The case is fully discussed by the opinion below, which renders any further discussion unnecessary.

The judgments should be affirmed, with costs.

BROWN, P. J., concurred; DYKMAN, J., not sitting.

Judgment in each case affirmed, with costs.

The opinion of the Special Term was as follows:
CULLEN, J.:

The defendant is organized under the general act of 1850 (Chap. 140) with a railroad constructed and operated from Coney Island to Atlantic avenue, Brooklyn. It is an ordinary steam surface road,

built not through streets, but on its own right of way, with its grade generally at the surface of the adjacent territory, though passing under some streets or avenues by tunnels or culverts. The Kings County Elevated railroad operates an elevated railroad on Fulton street, two blocks to the north of Atlantic avenue. The defendant desires to connect its road with that of the Kings County Company, by extending its road northerly to Fulton street. To reach the elevation of the Kings County road it is necessary that the extension and also part of its present road should be carried on an elevated road. To accomplish this result the defendant has, by resolution of its directors, changed its terminus to Fulton street, acquired by purchase a right of way to that street and obtained the consent of the common council to the extension and construction of its road. The extension crosses Lefferts place on an elevated structure. The plaintiffs, owning property in the vicinity, one on Franklin avenue and the other on Lefferts place, bring these actions to restrain the construction of the road across Lefferts place, claiming that the defendant is without legal right to erect it.

The first objection to the defendant's authority is the claim that a company organized under the general act of 1850 is without power to construct an elevated road in this city; that such power can be acquired only through a commission and the procedure prescribed in the Rapid Transit Act of 1875, the provisions of which are now incorporated in the Railroad Law of 1892 (Chap. 676). That an elevated railroad through a city for the purpose merely of affording rapid transit or serving as a substitute for a street railroad, even though built on its own right of way, cannot be constructed under the authority of the Railroad Act of 1850 has been decided. (*People's Rapid Transit Co.* v. *Dash,* 125 N. Y. 93.)

But the opinion of the court carefully declares that a railroad, under the act of 1850, need not be wholly confined to the surface and not at all an elevated or underground structure. This must be so, for in few railroads of any magnitude in the east are there not to be found tunnels or viaducts. As is said in the case cited, the judgment proceeds on the special facts of the case, that the structure and scheme were entirely foreign to anything contemplated by the general act. The counsel for plaintiffs very fairly concedes that a railroad like the New York Central might be constructed through a

city on an elevated viaduct, without acquiring rights under the Rapid Transit Act. I think that this concession covers the case at bar, unless it appears that the elevation and extension of defendant's road is a mere cover for the construction of a rapid transit elevated railroad, or in reality the extension of the Kings County Elevated road. But the agreed state of facts contain no allegation to this effect, nor are there facts set up which would justify such an inference. Common knowledge informs us that an elevated railroad of less than half a mile in length, and dropping to the surface in that distance, can neither be operated by itself for rapid transit nor as a part of the elevated railroad system in Fulton street. That the connection may be very advantageous to both roads and increase the travel on each is plain, and doubtless for this purpose the extension is to be made. But I find that the structure intended to be erected is not made for purposes of changing in any manner the general character of defendant's railroad, but solely that it may connect its road with the Kings County road at the grade of the latter. Such a structure, built for that purpose, is not within the condemnation passed in the *Dash* case.

The next objection is based on the prohibition of the rapid transit sections of the Railroad Law against locating a railroad upon certain streets in Brooklyn, of which Lefferts place is one. It is found in section 123 of the statute of 1892: "No such railway shall be located in or upon * * * Lefferts place, * * * Classon and Franklin avenues * * * between the southerly line of Lexington avenue and the northerly line of Atlantic avenue, * * * but such railway may be located and constructed across such excepted streets, avenues and places at their intersection only with other streets, avenues and places." The direction that no such railroad shall be located is plainly, as a matter of context, limited to railroads incorporated under the Rapid Transit Law. I should be unwilling to so restrict it if any immunity given by the statute to the adjoining property owners was substantially violated. The power to locate and construct roads across the excepted streets is expressly given. It is true the roads are to be constructed at the intersection of these streets with other streets. That Franklin avenue is an intersecting street within this provision, I am clear. If intersecting, a railroad

could unquestionably be constructed along it. Here the railroad is to be constructed not on the street, but on property abutting on the street. I think such a location may fairly be considered as being at the intersection of the street. But if I am wrong in this, similar strictness of construction will exclude any railroad but those organized under the Rapid Transit Act from the provisions of the section cited.

The last objection is that the requirement of the city charter, title 19, section 23, has not been complied with. I think the section cited has no application to any but street railroads. It was indeed decided in the *Dash* case that, under the act of 1860 (Chap. 10) relating to the city of New York, "across" a street was "upon" a street; but it is plainly not so under this section, for the only provision for consent or petition by property owners is upon the street "along" which the road is to be operated, and the difference between "along" and "across" is unquestionable.

There should be judgment for the defendant, with costs.